## JOHN D. GRAY

### *vs.*

## THE FIRST DIVISION OF THE ST. PAUL AND PACIFIC R. R. CO.

The public easement of a common street or highway does not include the right to use such street or highway as a railroad.

*Sec.* 7, *ch.* 6, *Laws* 1857, providing that the Minnesota and Pacific R. R. Co. shall have the right and authority to construct their railroad and branches, upon and along, across, under or over, any public or private highway, or street, if the same shall be necessary; but the said company shall put such highway or street in such condition and state of repair, as not to interfere with its free and proper use, confers a privilege or right so far only as the public easement is concerned, and does not confer the right, as against the owner of the fee of such street or highway, to appropriate the same, and construct and operate the railroad thereupon, unless by the consent of the owner, or upon compensation to him; and this proposition is not affected by the fact, that the dedication for the purposes of a street or highway was made after the passage of *Sec.* 7 above cited.

A complaint, in an action brought by the owner of the fee of a street or highway against the defendant, alleged that the defendant entered upon and appropriated the plaintiff's land (*i. e.*, the street or highway); dug and excavated the soil thereof; built embankments and laid down ties and rails thereon; and did complete, and does now maintain its railroad thereon; and has been, and now is, committing other acts of trespass and injury to the plaintiff's premises, by running cars and engines over the same daily, and using the same from day to day. *Held,* That the acts so alleged are a taking of private property. *Held further,* That it is unnecessary for the plaintiff to go farther, and allege that the defendant has not, since its entry upon and appropriation of his said land, had the damages appraised and paid them, or that proceedings for the ascertainment of such damages were not commenced cotemporaneously with, or before the entry com-

plained of, or that such proceedings are not now pending and undetermined, or that the defendant has refused to pay the value of the land taken pursuant to its charter, or that the plaintiff has ever demanded such payment.

To justify the taking of private property, without the consent of the owner, for the use of a railroad company, compensation must first be made or secured, and the making or securing of such compensation, is matter of defense to an action brought by the owner for damages arising from the taking and use of his land for such purposes.

The defendant removes this cause from the District Court of Hennepin County to this Court, by an appeal taken from an order of that Court overruling a demurrer, which the defendant had interposed to the plaintiff's complaint. The complaint, and the demurrer thereto, both sufficiently appear in the opinion of the Court.

H. R. Bigelow for Appellant.

Young & Webb for Respondent.

*By the Court*—Berry, J.—In the complaint in this action the plaintiff alleges that on the 18th day of August, 1866, he was, ever since has been, and still is, the owner in fee of certain lands situate in Minneapolis, subject only to the public easement of a common street or highway, on a portion of the same, said portion being a part of Dakota street, adjoining the other lands of the plaintiff; that prior to said 18th day of August, 1866, one Hoag, being the owner of land comprising Dakota street, did voluntarily and gratuitously dedicate the land comprising Dakota street to the use and purpose of a public street and highway, and that such dedication was duly accepted by the public authorities; that on or about said 18th day of August, 1866, the above mentioned portion of said Dakota street being then in possession of the plain-

Gray v. The First Division of the St. Paul and Pacific Railroad Company.

tiff, subject only to the public easement of a common street or highway, the defendant entered upon the same, and without consent of the plaintiff, and without paying or securing to him any compensation whatever therefor, and without offering so to do, and without causing the damages to the said property to be ascertained or assessed, appropriated the said portion of Dakota street to the use of the defendant, for the purpose of laying the track of a railroad, of which defendant is owner. The complaint further alleges that between the 18th day of August, 1866, and the commencement of this action, the defendant, by its employees, entered upon said portion of Dakota street and dug and excavated the soil thereof, to the width of forty feet, or thereabouts, and to the depth of twelve feet, or thereabouts, and to the length of four hundred and ten feet, or nearly so ; and did build embankments, and lay down ties and iron rails thereon, and did fully complete, and do now maintain their said railroad thereon; and on divers other occasions since said 18th day of August, has been, and now is, committing other acts of trespass and injury to said premises, by running cars, engines and vehicles over said premises daily, and by entering upon and using the same from day to day, for the private advantage and purposes of the defendant, to the great damage of the plaintiff already sustained, and still being by him sustained, by said acts of trespass, as well as in the depreciation of the value of his lands adjoining, and the buildings thereon, as in the obstruction of said street or highway, and the permanent injury thereto occasioned.

Damages are laid at $3000, and judgment prayed for that amount, and for an injunction. The defendant demurred to the complaint, on the ground that it did not state facts sufficient to constitute a cause of action, but the demurrer was overruled, and an appeal taken from the overruling order.

vol. xiii.—22

The complaint alleges that the plaintiff is *owner in fee*, and in possession of the portion of Dakota street appropriated and used by the defendant, as aforesaid, such ownership in fee and possession being "subject only to the public easement of a common street or highway." The defendant claims to be invested with all the powers conferred upon the Minnesota and Pacific Railroad Co., by a provision of the 7th section of its charter, found on *page* 6, *laws* 1857 (extra session.)

This provision reads as follows : " The said company shall have the right and authority to construct their said railroad, and branches upon and along, across, under or over, any public or private highway, road, street, plank road, or railroad, if the same shall be necessary ; but the said company shall put such highway, road, street, plank road, or railroad, in such condition and state of repair as not to impair or interfere with its free and proper use."

The demurrer admitting the ownership and possession by the plaintiff of the said portion of Dakota street, subject only to the easement mentioned, one question which is raised in this case is, whether, under such circumstances, the defendant was, without the consent of the owner, authorized to appropriate such portion of Dakota street, and to construct and operate its road over the same, as alleged in the complaint, without making compensation. Without reference to the claim made by the defendant, on the ground that the dedication in this instance was made after the granting of the charter, this question, as a general question, is substantially answered in the negative in *Schurmeier vs. The St. P. and P. R. R. Co.*, 10 *Minn.*, 82. The burden or servitude to which the plaintiff's land in this case was subject, was "the public easement of a common street or highway." Argument can hardly be required to show that an easement of this kind does not, by

any fair construction of language, include the right to appropriate and use the street or highway as a railroad.

As remarked by Selden, J., in *Williams vs. The New York Central Railroad Co.*, 16 *N. Y.*, 109, "to convert a common highway running over a man's land into a railroad, is to impose an additional burden upon the land, and greatly to impair its value." See also *Inhab. Springfield vs. Conn. River R. R. Co.*, 4 *Cushing*, 63. This additional burden is imposed at the joint expense of the public, and of the owner of the fee. It is therefore necessary that the latter should be consulted, and if his consent is not given, compensation must be made to him, unless it is dispensed with by some valid provision of law. It is argued by the defendant, that the charter in which *Sec.* 7 above quoted is found, is a public law, enacted before the dedication of Dakota street as a public highway, and that such dedication, being the voluntary act of the owner of the land, the dedicator must be deemed to have made the dedication with reference to the law, and in contemplation of thereby subjecting the land to the possible servitude of which the plaintiff now complains. We discover nothing in the complaint from which it can be inferred that the dedication was made subsequent to the time when the defendant's charter was granted, but as the arguments of both counsel appear to assume that such is the fact, we will not question it. We understand the proposition of the defendant's counsel to be, in other words, that if subsequently to the enactment of *Sec.* 7, any person dedicates, for the purposes of a street or highway, land over which the defendant after such dedication constructs its railroad, the provision quoted from *Sec.* 7 enlarges the ordinary extent of the dedication, so that it includes a dedication for the purposes of such railroad ; and the use of the land for railroad purposes is to be regarded as one of the uses and servitudes, to which the land owner intended to sub-

ject his land by the voluntary act of dedication. We are of opinion that the provision quoted from *Sec.* 7 was designed to confer a privilege or right so far only as the *public easement* of a common street or highway was concerned, leaving the defendant to deal with the private rights of individuals in the street as in other cases. This is the view taken of a similar statutory provision in *The Presbyterian Society of Waterloo vs. Auburn and Rochester R. R. Co.*, 3 *Hill*, 567. See also *Williams vs. N. Y. Central R. R. Co.*, *supra*, 111. It is to be observed, that *Sec.* 7 in terms applies to streets and highways generally, and without reference to whether the laying out or dedication was prior, or subsequent to the enactment of *Sec.* 7.

But as to cases in which the dedication ante-dated the enactment spoken of, it could not be claimed that a dedication for the purposes of a common street or highway, was made in contemplation of, and with the intention of subjecting the land to the servitude of a railway. In such cases the only effect which could be given to the provision of section 7, relied on, would be to authorize the defendant, as against the public, to construct and operate its railroad over the highway or street. And as the same language is used in reference to dedications subsequent, and prior, to the enactments spoken of, it is to be presumed that the intention of the legislature was the same in both cases.

Even if this was not the proper construction of the statutory provision referred to, it is by no means clear, that it would be competent for the legislature to enact, that a voluntary dedication of land for the purposes of a common street or highway merely, should be a dedication for the purposes of a railway also. By what authority can the legislature assume to say, that the owner of land shall voluntarily, and without compensation, confer upon the public any larger right in

his property, than he is willing to confer? One further position taken by the defendant's counsel remains to be considered. *Sec.* 3 of the charter before cited provides, that lands owned by, or belonging to any person, may be taken and appropriated for the purposes of the railroad, and shall be valued and paid for in the manner prescribed in a subsequent part of the charter. The subsequent part referred to is *Sec.* 13, which provides, that whenever the road is located, and its route determined, the company may apply for the appointment of commissioners to appraise the value of all lands, being private property, which shall be designated in the application, and which the company has entered upon, possessed, occupied or used, or may thereafter enter upon, take, possess or use, for its authorized purposes. Further provisions are made in reference to notice, appeals, &c., and it is finally provided that "the said company shall have full power and authority, after entering upon and taking any such lands, to have, hold, possess, occupy, use and enjoy the same, for any of the lawful purposes of the said company, from the time of such entry and taking, until the proceedings contemplated by the act shall have been finally determined, and until said company shall have refused, after demand made, to pay the value of said land, so ascertained as aforesaid, and they shall not, during such time, nor until such refusal, be disturbed in such possession or occupancy, use or enjoyment, by any proceedings either in law or equity." The defendant insists, that the complaint is demurrable because it contains "no allegation that the defendant has not since its entry upon and appropriation of the land, had the damages assessed and paid them; that proceedings for the ascertainment of such damages were not commenced cotemporaneously with, or even before the entry complained of; no allegation that such proceedings are not now pending and

undetermined; and no pretense that the defendant has ever re-fused to pay the value of the land taken pursuant to the char-ter, or that the plaintiff has ever demanded such payment." We are of opinion that it was not necessary that the com-plaint should contain these allegations or any of them. The complaint as we have seen, alleges that the defendant entered upon and appropriated the plaintiff's land; dug and exca-vated the soil thereof; built embankments and laid down ties and rails thereon; and did complete and does now maintain its railroad thereon; and has been, and now is, committing other acts of trespass and injury to the plaintiff's premises, by running cars and engines over the same daily, and using the same from day to day.

There can be no question that the acts charged are a taking of private property.

The Constitution of the United States, which controlled the legislature of the Territory of Minnesota at the time when the charter under which the defendant claims authority was granted, forbids the taking of private property for pub-lic use " without just compensation." Constitutional provis-ions of this kind appear to have received two constructions. By some Courts and text writers, it has been considered that they required an actual payment of the compensation, before the taking of the private property. By others, it is held suf-ficient, that the payment be either made or *secured* before the taking. *See* 1 *Redfield on Railways*, 3d *Ed.*, *p.* 298, 325 *and notes*. It is, however, to be observed that the charter under which the defendant claims, provides for the appointment of commissioners to appraise lands taken, only upon the application of the company, and only as to such lands as may be designated in such application.

The charter, then, does not even *secure* the ascertain-ment, much less the payment of the compensation. Besides,

even if it were the privilege of the land owner, upon his own motion, to procure the appointment of commissioners, and the appraisal of his lands taken, he would still be compelled to rely upon the solvency of the company, for payment of the ascertained compensation. And the case would be the same if, without availing himself of a provision for appraisement, he should bring an action for damages. See *Bloodgood vs. M. & H. R. R. Co.*, 18 *Wend.*, 9 ; *Powers vs. Beau*, 12 *Wis.*,.221 ; *Loop vs. Chamberlain*, 20, *Ib.*, 125. Without now determining whether, or not, the provisions of our State Constitution have affected the rights conferred by the charter spoken of, it is plain that they do not aid the defendant in this case. There would appear to be no provision in the charter for *securing* the compensation required to be made, when private property is taken for public uses. And if it be admitted that the defendant might at its option pay, or secure, the required compensation, still, as it could not, without paying or securing, take the plaintiff's land as charged in the complaint without his consent, it must show, as matter of defense, that such payment has been made, or security given. If it has neither made nor secured the just compensation required, it has no right to take and use the plaintiff's land as it is charged to have done in the complaint, the provisions of its charter to the contrary notwithstanding.

Order affirmed.